Good morning, your honors. May it please the court. I'm Matt Knepper on behalf of Cheryl Davis, and I'll be reserving three minutes time for rebuttal. Under the Fair Credit Reporting Act, section 1681EB, a credit reporting agency may be liable for applying policies that unreasonably result in inaccurate reporting, regardless whether a consumer disputes that information under 1681I. The court below abandoned any independent analysis of whether Experian's inaccurately suppressed payment history reporting for Davis. In contrast to this court's controlling authority in Shaw, the court below collapsed the analysis of reasonable procedures with the analysis of whether the information dispute was actually inaccurate. Rather than focus on the accuracy of the payment history suppression, the district court instead focused on the underlying basis for suppression and blamed Davis for not disputing that item. By suppressing Davis's payment history, Experian significantly damaged Davis by depriving her of significant offset to the impact her bankruptcy had on her credit score. One of the key questions here that I'd really like you to help me with is whether or not Davis sufficiently notified Experian of what exactly her claim was. Sure, and certainly that is our position. When she disputed the information that Experian was suppressing, the payment history data, Experian had suppressed that information on the basis of its own underlying policy, that is, its bankruptcy suppression policy. Even if she hadn't specifically disputed the question of whether her information or her account was discharged, she certainly put Experian on notice that the basis for its suppression was at issue. The only way for it to confirm that would have either been to engage in the complex legal analysis it claims it has no duty to, or to verify that information in the first instance with Carrington upon receiving the notice of the dispute. And it was on notice of what she was trying to get corrected because she included the correspondence from Carrington that she obtained before she ever bothered to dispute the information with Experian. And so if Carrington is saying in its own documents that it's reporting 24 months of flawless payment history to Experian, then it certainly was on notice that it needed to review the basis upon which it was suppressing that payment history. And the best way to do that, if it wanted to avoid the complex legal analysis, was to forward on the notice of the dispute and verify whether in CMS's opinion the account had been discharged in the bankruptcy. It didn't do that. In Carvalho, that was how the CRAs were able to avoid liability. They avoided liability because they verified the information in dispute with the furnisher. And this court said that CRAs aren't under a duty to resolve latent inaccuracies or questions of challenging legality of a particular debt, particularly where they verify that information with a creditor. 1681 IA's plain language requires the CRA to send prompt notice to dispute results even if it correctly rejects, excuse me. And so that would directly. But indeed, and that's their obligation to do under 1681 I. IA 2 says that within five days of receiving a notice of dispute from a consumer, a CRA must send on the notice of dispute to the furnisher. And, you know, ultimately 1681 IA 5 says if the information is not subject to verification, then the underlying information should either be deleted or updated, you know, according to whatever the furnisher indicates is accurate to the CRA. But Experian did not do that and took upon itself the, you know, the liability for, you know, ultimately determining that the account was still subject to the discharge. And here's the thing. Experian emphasizes one line in the correspondence from Carrington, which Davis attached. And that line says only that the account noted the filing of and discharge of a bankruptcy and nothing more with regard to its impact on the Carrington account. The only way to confirm that would have been with Carrington in the first instance, and it failed to do so. Counsel Fred Gould, if I can interject a quick question. Is there any significance for us to the fact, if I'm correct in this, that at some point the CRA, the credit reporting agency, asked Ms. Davis for more information and she gave no response to their inquiry? Your Honor, I'm glad you asked that question because that really is the second primary basis of the appeal. The Davis had alleged that Experian failed to send her notice of the results, any notice of the results. We only obtained what was on the face of that notice when we got into initial discovery with Experian. And yes, on the face of that notice, that is what Experian had explained to Davis, that it required more documents. Of course, in looking at the face of that notice, it calls for documents that she had already provided them with and called for clarification of the dispute that she'd already been clear about, that she disputed the suppression of the payment history reporting. And in failing to send her the notice of results in the primary... Where does it say that? Where does it say that she disputed that in her cover letter? That she disputed, I'm sorry, Your Honor, disputed what? Where does she state in her cover letter precisely what she is disputing as opposed to go look through attachments and find it? Okay. I'm looking for that in the record right now as well. The, on the, well, on the face, what it said was, on the face of her letter to Carrington, what it said was, I mean, rather to Experian, she had said that she, and this is in the record at, apologies, Your Honor, I'm just trying to find the cover letter real quick. 133. Sure. So what she says is, you are, let's see, I obtained information directly from Carrington in response to request to them. And it furnished, and it provided proof that it furnished to you that I was current with my payments from August 10, 2015 through August 10, 2017. However, you did not include all of this information in my attached credit file reporting. And that reporting was necessary to be complete information about that trade line. And then she went on to about how the suppression of that, that second full paragraph of the positive credit data is depriving me of complete and accurate credit reporting furnished about this account. I don't know if that. But didn't Carrington, didn't the credit reporting agency, I'm just looking for that credit report. It says, discharged through bankruptcy, chapter 13, never late. Was there, is there some convention about what never late means? Well, the status reporting of never late is different than payment history reporting, the monthly payment history reporting that's attached to a trade line. Experian's own reporting specifically constitutes up to 35% of a FICO score, separate and apart from the status. So yes, the failure to report the ongoing payment history would have had a significant impact on our client. Of course, we had to stay in discovery and did not have the opportunity to fully explore what that impact was and the degree to which it informed Carrington's decision to deny her refinance twice over the course of a year and a half before it finally did grant her refinance in early 2018. So just to follow up on Judge Gould, if I may, what was wrong with the credit reporting agency requesting additional information? Well, there's nothing wrong with the credit reporting agency asking for additional information. The problem is that it never sent her that request. Now that's, this was resolved at the pleading stage. We did request that information, although it's not in the record. We did request that information from Experian, but it was the day before we moved to compel any kind of evidence suggesting that they had in fact sent her notice of the results. They can ask, but they got to send the notice of results to the consumer. And that's not what happened here, Your Honor. I know that I see I'm running fairly well on time. I'd like to reserve for rebuttal. All right, you can reserve. You may reserve. Ms. O'Connor? I'm not here, Ms. O'Connor. Pardon me. May it please the Court? Cheryl O'Connor on behalf of Experian Information Solutions Incorporated. Your Honors, in response to the issue that Judge Wardlaw raised, Ms. Davis never put Experian on notice that what in fact she wanted to dispute was whether or not her account was discharged in bankruptcy. In the original disclosure, the May 2017 disclosure, Experian reflected that Carrington was reporting to Experian the account was discharged in bankruptcy and had a zero balance and that Ms. Davis was never late on her payments. What Ms. Davis disputed, the information that Ms. Davis provided to Experian was conflicting, and Experian was unable to decipher, nor did it have an obligation to decipher, what in fact her dispute was beyond the actual matter of her letter. This Court and others have found that reporting an account discharged in bankruptcy without payment history following the discharge is neither inaccurate nor misleading, so long as it's reported as discharged in bankruptcy and zero balance. Counsel, what I don't understand, though, is in fact it was not discharged in bankruptcy, right? Well, I don't know that as we stand here today, and that's exactly the issue that the District qualified nor required to make. That's what bothers me, the argument that there's three credit agencies in the whole United States, right, and they can't determine whether or not something was discharged in bankruptcy. That's a little scary. Well, but your Honor, the two entities most likely to know and most equipped to know whether this account was discharged in bankruptcy in this case are Ms. Davis and Carrington, and neither one of them raised the issue that it was not in fact discharged in bankruptcy. That issue wasn't raised until litigation ensued, so we know from the initial disclosure that Carrington was reporting to We also know that the plaintiff never disputed that information, and on top of that, we know that all of the information that the plaintiff provided to Experian was consistent with reporting the account as discharged in bankruptcy. The letter that Carrington provided states not just that was a bankruptcy filed under this particular plaintiff's name. It states with respect to this account that this account was included in a petition and discharged, and so when Experian received this information, and if you look at, I believe it's page 39 of the record, Experian's response to the plaintiff's dispute letter was entirely reasonable when it sent her two pieces of information. First, it said, excuse me, one second, yes, I'm sorry, it's excerpt of record 36. It's page 3 of the October 2017 disclosure, which is the response to Ms. Davis's dispute. It says the account was either not appearing on your credit file or it was already reflected as the requested status, so what Experian did is it took Ms. Davis's letter and it took the documents that Ms. Davis included with her letter and it looked at how the account was reporting, which at this point is on excerpt of record 39. You see a Carrington Mortgage Services discharged in bankruptcy, recent balance of zero, and so that's entirely consistent with the information that Ms. Davis provided. Then Experian took the second step of informing Ms. Davis on excerpt of record 34 that if there's something else that you're disputing here, please let us know. We were either unable to honor a portion of your request, and then it identifies for Ms. Davis the information that she needs to provide if she's not satisfied with the results. Can I ask you a question that kind of confused me? I hope I'm not interrupting my colleagues. So the way I understand chapter 13 is that a mortgage would typically become part of the bankruptcy estate in the sense that the trustee has control over it. As long as the debtor continues to make payments on that home mortgage, they can continue to live there and the bankruptcy essentially has no effect on that obligation. In some instances, a trustee can win a chapter 13 bankruptcy in toto is quote discharged. It's ambiguous in my mind, and maybe I'm wrong concerning whether that refers to some separate discharge like you might have a release of an obligation under a chapter 7 as opposed to the entire organization. So that sort of threw me for a loop because the way I understand Carrington is it's saying upon review, the account reflects a chapter 13 bankruptcy was filed on June 27 and was later discharged. That's all accurate. And to the extent that part of that bankruptcy, it doesn't necessarily mean that the debt was discharged. So I kind of felt like it was two in the night when I was thinking about this case. What do you think? Well, I think that Experian is not in a position to resolve that. And as this court recognized in Carvalho, what Experian's obligation to do is to collect the information that's reported from the furnisher. And here, the furnisher was telling us it was discharged in bankruptcy and zero balance. How that plays out factually is a code is placed on the account that remains there and suppresses a payment history and other information, which generally is to the benefit of the consumer, right? This policy is consistent with the notion that a bankruptcy should allow a consumer to have a fresh start and to not be beholden to or prior late payments. So it would be inconsistent and misleading not to apply the bankruptcy code in a situation like this. I'm not sure that I've answered Your Honor's question. Well, I guess what I'm asking is Carrington provided what appears to be ambiguous or erroneous information to your client. Is that true? Well, I don't know that that's true, Your Honor. All of the information that was before Experian at the time that it analyzed this issue, all of it was that the account was reporting as discharged in bankruptcy and zero balance. And I think it's important to note that this information was disclosed to Ms. Davis and she chose not to dispute it. She chose not to dispute that there was a zero balance on the account. So if we were to determine that if Experian were to make this legal determination that the account actually wasn't included in bankruptcy, despite Carrington reporting that, despite the documentation submitted with the disclosure letter confirming that, then not only would the plaintiff, not only would the 24-month period of payments be reported, but the $170,000 balance on the account would also be reported. So it's not unreasonable to think that Ms. Davis did not want to dispute the bankruptcy discharge and zero balance. And Experian shouldn't have stepped in and made that determination for her. So what was it about, sorry to, again, I hope I'm not stepping on anyone's time. So what about the notice that you received, that your client received, do you believe was deficient? Well, that depends on what it is that she now claims that she's disputing, right? If all she was disputing was the suppression of the payment history, then her notice was not deficient. Experian compared it to how, I see my time is about to expire. May I finish answering your question?  Thank you. Experian was reporting it as she requested. And as this court has held in Florence and the FTC has reminded us, suppressing the payment history is not inaccurate or misleading when it's discharged in bankruptcy. If there are no further questions, thank you, Your Honors. Thank you, Ms. O'Connor. Mr. Knepper, you have a minute left. Okay. Let me just start with the question of, we looked through the text of her dispute letter to Experian and she clearly said that what she was disputing and the only thing really she was disputing was the suppression of the payment history. If Experian needed to verify the underlying basis for that suppression, that is whether the account was discharged in bankruptcy, it needed to send a notice of dispute to Carrington, which it did not do. And in failing to do so, it violated the plain language of 1681 IA2, which requires that it do so. Second, we can talk all day about what Experian included on its notice of results of reinvestigation to Davis, but she alleged that she never received it, that Experian never sent it. And until we get discovery on that, it would be premature to dismiss this case with prejudice. Sorry, counsel, what do you want discovery on? Whether Experian can establish that it sent her notice of the dispute results. We can talk about that, you know, the information they included on the face of it, but if they didn't send it, it's worthless. And that's one of the bases independently for reversing, because if she didn't have adequate information, for example, the 1-800 number they could have called a live agent, had a real-time discussion, but she never received the notice of results. And so she didn't receive that information either. And without that summary of rights, she was deprived of a meaningful dispute process. There is one other thing that I just want to note, there is an industry guideline or reporting guidelines. We'll brief this out, but I want to emphasize this last point. Metro 2 guidelines, Experian and Carrington both adhere to those FAQ 28 and 29, which is in our excerpts of record. Those FAQs say that in the circumstance of a Chapter 13, where a debtor has completed all planned payments on a secured loan and uses specifically the example of a mortgage, what you're supposed to do as a creditor, as a CRA, is remove the bankruptcy indicator and report the payment history so that that history can be created and maintained over the years through the consumer data industry. And with that in mind, there's no doubt that the underlying procedures here were unreasonable and unreasonably resulted in the suppression of that payment history. And with that, and if there are no further questions, I'll rest. Thank you, counsel. Davis versus Experian will be submitted and we'll take up Strammell's, Burt's versus Song.
judges: Wardlaw, Gould, Pregerson